KOBE IMPORT CO. *v.* UNITED STATES

No. 7997.—

Entry No. 93460, etc.

(Decided May 14, 1951)

*Jordan & Klingaman* (*Edward F. Jordan* and *Jacob L. Klingaman* of counsel) for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Guy Gilbert Ribaudo*, special attorney), for the defendant.

OLIVER, Chief Judge: The appeals for reappraisement listed in schedule "A," hereto attached and made a part hereof, involve the valuation of glass chatons or rhinestones exported from China during the period from March to October 1941.

Counsel have agreed that the proper basis of valuation is export value, section 402 (d) of the Tariff Act of 1930.

The plaintiff claims that the consular invoice prices represent such export value in each case. Plaintiff also claims that an item of commission appearing on the invoices is a buying commission and is not a part of the export value.

The defendant claims the export value to be represented by the appraised value in each case.

Entry of the merchandise in some of these cases was at values higher than the invoiced prices, and in each instance the goods were appraised at still higher values on the basis of export value. There is no showing that the appraised values include any item of commission.

According to the record, the plaintiff, Kobe Import Co., conducted its business in the following manner: The company consisted of a partnership of Ralph and Louis Josephson, who are brothers. Ralph Josephson conducted the import business in New York; Louis Josephson attended to the operations of the business in the Orient and maintained his headquarters in Shanghai by way of desk space in the Eastern Undies Co., which was operated by C. Y. Chen. Ralph Josephson sent orders or instructions as to what to buy, arranged letters of credit, and also transmitted money as needed. Louis Josephson then advertised for the merchandise he required. Sellers answered the advertisements and presented samples. Louis Josephson then made purchases of the goods he wanted, and, since he did not speak Chinese, Chen, who spoke both Chinese and English, was always present and acted as interpreter. Chen also inspected, packed, and shipped the goods, for which services he was paid a commission. Payments of the bills, including his commission, were made through Chen either directly by check or against shipping documents.

Louis Josephson testified that the merchandise consisted of job lots of broken assortments of chatons and that the consular invoice prices represent the prices he paid. Plaintiff introduced an affidavit of C. Y. Chen (exhibit 8), who states he speaks and understands the English language and that he *attended* to the purchase and shipping of various articles of merchandise, including chatons, and acquired certain information as a necessary part of his business. He then testifies:

\*    \*    \*  ·   \*    \*    \*    \*

7. That the prices at which the said merchandise was purchased were the prices on or about the above-mentioned dates of exportation at which the above-mentioned sellers and others in the Shanghai market were freely offering to sell such and similar merchandise to all purchasers in the usual wholesale quantities and in the ordinary course of trade for export to the United States and for home consumption in China, and that the quantities covered by the above-mentioned purchases were the usual or ordinary wholesale quantities of such or similar merchandise being offered for sale and sold in Shanghai at or about said dates of exportation for export to the United States and for home consumption in China.

\*    \*    \*    \*    \*    \*    \*

Government counsel objected to the competency and relevancy of this affidavit.

The above-quoted portion of Chen's affidavit refers to information which a seller of merchandise might supply from his own knowledge, but a third party, in this transaction an interpreter or buying commissionaire, could make the same statements only by way of hearsay testimony. The record does not contain any corresponding statements by a seller of the merchandise. Even if the sources of this information were fully disclosed, in the light of the stated qualifications of the witness, this affiant's repetition thereof would not be competent.

I therefore find and hold that said Chen is incompetent to give the above-quoted testimony, and the hearsay statements in his affidavit, accordingly, must be disregarded as evidence.

The only other evidence in this record in relation to the export value of the involved merchandise is the testimony of Louis Josephson that the merchandise consisted of job lots of broken assortments of chatons and the prices shown on the consular invoices represent the actual purchase prices paid.

The invoice statements as to the purchase prices were before the appraiser and were disregarded by him when the appraisements were made in these cases. Accordingly, the evidence of prices paid, different in amounts from the appraised values, is not sufficient to overcome the presumption of correctness attaching to the appraised values.

On the record herein I find the export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, to be the proper basis for the determination of the value of the merchandise here in question, and that such values are represented by the appraised values in each case.

Judgment will be rendered accordingly.